# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JOHNNY A. REED, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | * CIVIL ACTION NO. 16-000090-B |
| | * |
| NANCY BERRYHILL,[1] | * |
| Acting Commissioner of Social | * |
| Security, | * |
| | * |
| Defendant. | * |

## ORDER

Plaintiff Johnny A. Reed (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq*., and 1381, *et seq*. On May 25, 2017, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 19). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and

---

[1] Nancy Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I. **Procedural History**

Plaintiff protectively filed his application for benefits on October 1, 2012, alleging disability beginning April 30, 2011 based on diabetes, problems with legs, back problems, problems with right ankle, no sight in right eye, problems with left eye, and high blood pressure. (Tr. 133, 171, 183). Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge James Barter on February 10, 2014. (Tr. 34). Plaintiff attended the hearing with his counsel and provided testimony related to his claims. (Id.). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Tr. 54). On July 25, 2014, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Tr. 30). The Appeals Council denied Plaintiff's request for review on January 15, 2016. (Tr. 1). Therefore, the ALJ's decision dated July 25, 2014, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument was conducted on June 1, 2017 (Doc. 21), and the parties agree

that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issues on Appeal

1. **Whether substantial evidence supports the RFC for a range of sedentary work with the stated restrictions?**

2. **Whether the ALJ fully considered the effect of Plaintiff's obesity on his ability to work?**

## III. Factual Background

Plaintiff was born on August 22, 1968, and was forty-five years of age at the time of his administrative hearing on February 10, 2014. (Tr. 34, 39, 171). Plaintiff graduated from high school. (Tr. 39).

Plaintiff worked from 2003 to 2011 as a self-employed handyman and as a sales person in a hardware store from 1986 to 2001. (Tr. 39, 184). At the administrative hearing, Plaintiff testified that he cannot work now because he has problems with blindness in his right eye (detached retina), low vision in his left eye, diabetes for which he takes insulin, high blood pressure, leg pain (neuropathy), and low back pain.[2] (Tr. 42-47, 51).

---

[2] In addition to taking insulin for diabetes, Plaintiff takes medication for high blood pressure and cholesterol. (Tr. 45, 185).

3

## IV. Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

(S.D. Ala. June 14, 1999).

V. **Statutory And Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past

5

relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI. Discussion**

    **A. Substantial evidence supports the ALJ's RFC for a range of sedentary work with the stated restrictions.**

Plaintiff argues that the ALJ's RFC for a range of sedentary work is not supported by substantial evidence because it is not based on an RFC assessment by a medical expert. (Doc.

6

12 at 2). Specifically, Plaintiff argues that the record is devoid of an RFC assessment by any medical expert, except for the opinion of a single decision maker. Plaintiff further states that he requested an additional consultative examination, but the request was denied. (Doc. 12 at 4). In addition, Plaintiff argues that the ALJ did not assign appropriate weight to his treating physician.[4] (Id.). Having reviewed the record at length, the Court finds that Plaintiff's claims are without merit.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the plaintiff's residual functional capacity, the

---

[4] In his brief, Plaintiff fails to identify any treating physician or any treating physician's opinion that the ALJ purportedly discounted. Accordingly, this argument is unavailing.

7

claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet his burden in this case.

In his decision, the ALJ found that Plaintiff has the severe impairments of diabetes mellitus with diabetic retinopathy in the right eye, gout, hypertension, obesity, lower back pain, and peripheral neuropathy. (Tr. 22). Even so, the ALJ found that Plaintiff still has the RFC to perform a range of sedentary work with the following restrictions: Plaintiff "cannot climb ladders, ropes and scaffolds and cannot crawl. [He] has the ability to occasionally climb stairs, stoop, crouch and kneel, but he cannot work at unprotected heights, should avoid hazards, and should avoid jobs that require good depth perception or fine vision." (Tr. 25). Based upon the testimony of the vocational expert, the ALJ concluded that although Plaintiff is unable to perform his past work as a sales clerk, he could perform the jobs of "brake linings coater" and "surveillance system monitor," and "waxer," all of which are sedentary and unskilled. (Tr. 28-29). Thus, the ALJ found that Plaintiff is not disabled. For the reasons discussed herein, the Court finds that the ALJ's decision is supported by substantial evidence.

At the outset, it should be noted that Plaintiff's

contention that the ALJ's RFC assessment is not based on substantial evidence simply because the record is devoid of a formal RFC assessment by an examining medical source is incorrect. "The ALJ's RFC assessment may be supported by substantial evidence, even in the absence of an opinion from an examining medical source about Plaintiff's functional capacity." Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 n.5 (M.D. Ala. March 23, 2012) (citing Green v. Soc. Sec. Admin., 223 Fed. Appx. 915, 923 (11th Cir. 2007) (unpublished) (RFC assessment was supported by substantial evidence where ALJ properly rejected treating physician's opinion and formulated plaintiff's RFC based on treatment records, without a physical capacities evaluation by any physician)); see also Packer v. Astrue, 2013 U.S. Dist. LEXIS 20580, *7, 2013 WL 593497, *2 (S.D. Ala. February 14, 2013) (the fact that no treating or examining medical source submitted a physical capacities evaluation "does not, in and of itself, mean that there is no medical evidence, much less no 'substantial evidence,' to support the ALJ's decision."). Thus, Plaintiff's argument is without merit.

Second, in fulfilling his or her duty to conduct a full and fair inquiry, the ALJ has the discretion to order a consultative examination where the record establishes that such is necessary to enable the ALJ to render a decision. Holladay v. Bowen, 848

9

F.2d 1206, 1210 (11th Cir. 1988). The ALJ is not required to order a consultative examination where the record contains sufficient evidence to permit the ALJ's RFC determination. Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007)("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."); Good v. Astrue, 240 Fed. Appx. 399, 404 (11th Cir. 2007) (unpublished) ("the ALJ need not order an additional consultative examination where the record was sufficient for a decision.").

Having reviewed the record in this case, the Court finds no error in the ALJ's decision to deny Plaintiff's request for an additional consultative examination. Indeed, the record before the ALJ contained examination findings and consultative reports from a board certified family practitioner, Dr. Thomasina Sharpe, M.D., and from a consulting optometrist, Dr. John W. Clardy, O.D. (Tr. 292, 300).

Turning first to Dr. Sharpe's consultative report dated December 1, 2012, Dr. Sharpe noted that Plaintiff had a history of diabetes for approximately twenty years for which he was being treated with medication and insulin. Significantly, Dr. Sharpe noted that Plaintiff had no kidney disease, no cerebral

10

vascular accident, no heart disease, no hospitalizations, and no emergency room visits in the previous two years.[5] (Tr. 300-01). With respect to Plaintiff's vision problems, Dr. Sharpe found that Plaintiff's eyesight was 20/70 in his left eye and 20/200 in his right eye without lenses. (Tr. 301). Plaintiff reported to Dr. Sharpe that he wore reading glasses and managed all of his activities of daily living, including cooking and driving, although he did not drive at night. (Id.). Plaintiff also reported a history of back problems for ten years, with no physical therapy and only conservative medication treatment. Upon examination, Dr. Sharpe found that Plaintiff could bend to remove his shoes and socks and climb on and off the examination table (although he performed the latter with some difficulty); he had a normal gait (although he had difficulty with heel/toe gait); he needed no assistive device; and he had 5/5 muscle bulk and strength, and 5/5 bilateral grip strength, with intact tone and no atrophy. (Tr. 301-02). Dr. Sharpe diagnosed Plaintiff with diabetes mellitus with retinopathy and neuropathy, lower back pain, morbid obesity, and uncontrolled hypertension. (Tr. 303). Dr. Sharpe assigned no limitations from any of Plaintiff's conditions.

---

[5] Plaintiff reported to his treating ophthalmologist, Dr. Mark Douglas, M.D., on August 27, 2013, that he had been able to control his diabetes with medication. (Tr. 328).

11

Next, the record before the ALJ contained the consultative report of Dr. John W. Clardy, O.D., an optometrist who performed an eye examination on Plaintiff on November 27, 2012, and found that Plaintiff had a detached retina in the right eye (with a poor prognosis),[6] and a normal visual field in the left eye (with a "fair" prognosis). (Tr. 292-93). Dr. Clardy noted that Plaintiff had sufficient vision in his right eye to see hand motions (without the use of lenses), but that he had no depth perception. (Tr. 292-93). Dr. Clardy opined that Plaintiff should avoid work requiring "good" vision and avoid working around heights. (Id.).

Also, with respect to Plaintiff's vision problems, the record contained the treatment notes of Plaintiff's internist, Dr. Huguette Douyon, M.D., who documented repeatedly throughout 2012 to 2014 that Plaintiff reported "no blurred vision." (Tr. 334, 351, 354, 357, 363, 366, 380, 387). Significantly, Plaintiff testified at his hearing in 2014 that, even with his vision problems, he is able to read large print with glasses and can read a newspaper with magnification. (Tr. 43). In addition, he is able to drive, mow, shop, pay bills, count change, and cook. (Tr. 41, 48, 176-80).

---

[6] The treatment notes from Dr. Mark Douglas, M.D., from 2010 to 2013 also contain diagnoses of diabetic retinopathy, macular degeneration, and detached retina of the right eye. (Tr. 229-42, 328-32).

Also, with respect to Plaintiff's low back pain, the record confirms the ALJ's finding that there is no objective evidence, such as MRIs or x-rays, showing any significant impairment of the spine. (Tr. 27). To the contrary, Dr. Douyon treated Plaintiff's back pain with medication only and repeatedly instructed him to exercise and engage in regular physical activity. (Tr. 335, 351-52, 381). Also, as stated, Plaintiff reported driving, shopping, and mowing the lawn, and there is no evidence of any problems with ambulation or the need for a cane or other assistive device. (Tr. 176-80, 302).

With respect to Plaintiff's gout in his right arm and hand, Dr. Douyon found in January 2012 that Plaintiff had stiffness and decreased range of motion in his right elbow; however, he had normal muscle strength and no joint swelling. Dr. Douyon recommended only ice and elevation. (Tr. 286-87). In December 2012, Dr. Sharpe found normal range of motion in Plaintiff's upper extremities bilaterally. (Tr. 302).

With respect to Plaintiff's hypertension, the record shows that Dr. Douyon prescribed medication, diet, and exercise, while noting Plaintiff's poor compliance with his medication. (Tr. 247, 250, 358, 363). Nothing in the record suggests that Plaintiff's hypertension, or any of his impairments for that matter, resulted in limitations in excess of the RFC.

Based on the foregoing, the Court finds that the record was

sufficient to enable the ALJ to determine Plaintiff's RFC without obtaining an RFC assessment from a medical source. The Court further finds that substantial evidence supports the ALJ's determination that Plaintiff can perform a range of sedentary work with the stated restrictions. Indeed, Plaintiff has failed to show that any limitations caused by his impairments exceed the RFC and are not accommodated by the RFC and its stated restrictions. Accordingly, Plaintiff's claim must fail.

### B. The ALJ properly considered the effect of Plaintiff's obesity on his ability to work.

Last, Plaintiff argues that the ALJ erred in failing to consider the impact of obesity on his ability to work, despite finding it to be a severe impairment. Plaintiff claims that the ALJ did not mention obesity, except when he found it to be severe. (Doc. 12 at 5). Plaintiff's claim is without merit.

Social Security Ruling 02-1p guides courts in evaluating disability claims brought by a claimant with obesity, providing that an ALJ will consider a claimant's obesity at every step of the sequential evaluation process. See SSR 02-1p, 2002 SSR LEXIS 1, 2002 WL 34686281. The Ruling states that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately" and directs the ALJ to "find that obesity is a 'severe' impairment when, alone or in combination with another medically

determinable physical or mental impairment(s), it significantly limits an individuals physical or mental ability to do basic work activities." Id. "There is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment," nor do "descriptive terms for levels of obesity (e.g., 'severe,' 'extreme,' or 'morbid' obesity) establish whether obesity is or is not a 'severe' impairment for disability program purposes." Id. Rather, the Agency "will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." Id. The Ruling recognizes, for example, that "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." Id. In such cases, "[a]n assessment should . . . be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." Id.

Contrary to Plaintiff's argument, the record shows that the ALJ expressly considered Plaintiff's obesity throughout the sequential evaluation process, including in assessing whether Plaintiff met a Listing. The ALJ stated:

> In evaluating the claimant's obesity, the undersigned must consider all of the claimant's physical and mental listings in conjunction with the claimant's obesity to determine if the claimant's obesity has reached a level that would

15

cause the claimant's other impairments to meet or
medically equal a listed impairment (SSR 02-1p).

(Tr. 24). The ALJ concluded, based on the medical evidence of record, that Plaintiff's physical impairments, in conjunction with his obesity, did not meet a Listing. (Id.). Then, the ALJ expressly considered Plaintiff's obesity in assessing the RFC, stating:

> [T]he claimant has had a long medical history of morbid obesity (Exhibits 2F, 3F, 5F, 9F, 11F). His medical evidence shows that he is 5'3" and weighs approximately 300 pounds, with a Body Mass Index approaching 53 (Exhibits 2F, 9F). His physicians have counseled him on weight loss and have encouraged a good nutrition and exercise regimen (Exhibit 2F/44). The undersigned must consider the combined effects of obesity with other impairments, and as such, finds it likely that the claimant's lower back pain and leg pain could be associated with his morbid obesity (SSR 02-1p). The claimant testified that he must alternate between sitting and standing to help alleviate lower back pain and leg pain, and that he can walk though he must take breaks. As such, the undersigned finds his impairments in combination with the claimant's obesity supports a less than sedentary exertional level with limitations on the claimant's ability to climb stairs, stoop, crouch and kneel.

(Tr. 27-28). The ALJ discussed Plaintiff's significant activities of daily living (driving, mowing, shopping, walking short distances, visiting family and church), as well as Dr. Sharpe's observation that Plaintiff was able to bend to remove his shoes and socks and was able to get on and off the examining table, although with some difficulty noted with respect to the

latter. (Tr. 25-27, 177-79). The ALJ concluded that, "although the claimant has been diagnosed as being morbidly obese, which may be attributing to some pain in his extremities, he is still able to walk, attend church and visit with his father and brother weekly, indicating no serious limitation on his ability to ambulate effectively." (Id.).

Having reviewed the evidence at length, the Court concludes that the ALJ's findings, including his specific reference to SSR 02-1p, sufficiently demonstrate that he properly considered Plaintiff's obesity and its effect on his other impairments at all steps of the evaluation process. It is the Plaintiff who bears the burden of proving his disability in this case. See 20 C.F.R. 404.1512 ("In general, you have to prove to us that you are . . . disabled.). Plaintiff has failed to show that his obesity has in fact caused limitations to his exertional and postural functions in excess of his RFC.[7] Indeed, the substantial evidence shows the contrary. Thus, Plaintiff's claim must fail.

## VII. Conclusion

For the reasons set forth herein, and upon careful

---

[7] As stated, the ALJ found that, while Plaintiff has the RFC to perform a range of sedentary work, he "cannot climb ladders, ropes and scaffolds and cannot crawl. [He] has the ability to occasionally climb stairs, stoop, crouch and kneel, but he cannot work at unprotected heights, should avoid hazards, and should avoid jobs that require good depth perception or fine vision." (Tr. 25).

17

consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

**DONE** this **11th** day of **September, 2017.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
